# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CR-60-TLS |
| | ) | (1:10-CV-309) |
| ANDRES CUELLAR-CHAVEZ | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 349] filed on September 2, 2010. The Defendant contends that his trial counsel rendered ineffective assistance of counsel during plea negotiations with the Government when he failed to discuss the option of entering a guilty plea without a plea agreement and the implications of doing so. For the reasons set forth in this Opinion and Order, the Defendant's Motion will be denied.

## BACKGROUND

The Court previously provided a summary of the investigation leading up to the Defendant's arrest in its Memorandum [ECF No. 293] overruling the Defendant's objections to the PSR dated March 17, 2009:

> This criminal case arises from an investigation of a shipment of about 1000 pounds of marijuana from Brownsville, Texas, to Fort Wayne, Indiana, in 2006. Agents from Immigration and Customs Enforcement (ICE), a federal agency, and local Indiana law enforcement were involved in the investigation.
> Codefendants Enedeo Rodriguez, Jr., Jose Hernandez, and Jose Ramirez wanted to bring a shipment of marijuana to Fort Wayne. Defendant Cuellar-Chavez controlled a large amount of marijuana that he had arranged to bring into Texas from Mexico. Defendant Adaberto Guzman (also known as Juaquin Tapia and John Doe) found a driver, who happened to be an undercover law enforcement agent, to transport the marijuana from Texas to Indiana. Codefendant Guzman and Defendant Cuellar-Chavez gave instructions to the driver, including an order to contact Codefendant Jose Hernandez when the driver arrived in Fort Wayne. Defendant

Cuellar-Chavez traveled to Fort Wayne to ensure that the drugs were delivered and that payment was made.

When the drugs arrived on October 18, 2006, Codefendant Hernandez met the driver, and they drove to Codefendant Jose Ramirez's home, where they unloaded the marijuana. Defendant Hernandez and the driver left the house and met Defendant Cuellar-Chavez along with Codefendants Guzman and Rodriguez at a Fort Wayne restaurant. Later that evening, Codefendants Hernandez and Ramirez were arrested at the house where the marijuana was stored, and the drugs were seized. Police also arrested the other three Codefendants, including Defendant Cuellar-Chavez, at the restaurant that evening.

The Defendants were transported to an Indiana State Police post in the southwest area of Fort Wayne for processing and interrogation. All of the Defendants except for Codefendant Ramirez gave incriminating statements to the agents during interviews. Defendant Cuellar-Chavez told the agents "that he was not the source but an employee responsible for the delivery of the drugs, for which he expected to be paid." (Lievers Aff. 5, DE 1-2 at 6.) He also told the agents he came to Indiana to ensure the delivery occurred, and he planned to return to Mexico afterward. (*Id.*)

(Sentencing Mem. 1–3, ECF No. 293).

On October 20, 2006, a Complaint [ECF No. 1] was filed, charging the Defendant and his alleged co-conspirators with conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 18 U.S.C. § 2. On October 25, 2006, Attorney Linda M. Wagoner entered her appearance [ECF No. 25] on behalf of the Defendant. After a detention hearing, the Defendant, along with his alleged co-conspirators, was ordered detained pending trial on October 26, 2006.

On November 15, 2006, a grand jury returned a two-count indictment [ECF No. 54] against the Defendant and his co-conspirators. Two of the Defendant's co-conspirators, Hernandez and Ramirez, subsequently entered guilty pleas as to the conspiracy charge on February 7, 2007, and May 14, 2007, respectively. On August 9, 2007, Rodriguez filed a Motion to Suppress [ECF No. 103]. Shortly thereafter, on November 21, 2007, Tapia filed a Motion to Suppress [ECF No. 125]. Attorney Wagoner filed a Motion to Withdraw [ECF No. 128] on

December 3, 2007. The Court held a hearing [ECF No. 134] on December 11, 2007, at which it granted Attorney Wagoner's Motion to Withdraw. Attorney Travis Friend entered his appearance [ECF No. 141] on behalf of the Defendant on December 17, 2007. After holding two evidentiary hearings and reviewing the parties' written briefs, the Court denied Rodriguez's and Tapia's Motions to Suppress by Orders [ECF Nos. 194 & 195] dated August 6, 2008. The parties subsequently proceeded to trial. The five day jury trial took place between October 14 and October 20, 2008. At the conclusion of the trial, the Defendant, was convicted of conspiracy to possess with intent to distribute a Schedule I controlled substance, marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. On March 16, 2009, the Court sentenced the Defendant to 121 months imprisonment.

After sentencing, the Defendant filed a Notice of Appeal challenging: (1) whether this Court erred when it applied a two level enhancement to the Defendant pursuant to U.S.S.G. § 3B1.1(c); (2) whether this Court erred when it determined that the Defendant was not eligible for a safety-valve reduction; and (3) whether this Court incorrectly applied the 18 U.S.C. § 3553(a) factors in sentencing him to the maximum recommended sentence under the guidelines rather than considering the sentence of his co-defendants. The Seventh Circuit subsequently affirmed the judgment of this Court on August 11, 2010.

On September 2, 2010, the Defendant filed a timely, pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 349]. The Government filed its Response [ECF No. 355] on November 15, 2010. The Defendant filed his Reply [ECF No. 356] on December 6, 2010. After reviewing the parties' pleadings, the Court ordered that the Defendant be appointed counsel and scheduled an evidentiary hearing to address

factual issues raised in the Defendant's Motion. Following a two-day evidentiary hearing in February 2012 [ECF Nos. 371 & 372], counsel for the Defendant filed a Supplemental Brief in Support of Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [ECF No. 376] on April 28, 2012. The Government filed its Post Hearing Brief [ECF No. 381] on May 30, 2012. Counsel for the Defendant filed the Defendant's Reply to the Government's Post-Hearing Brief [ECF No. 384] on June 18, 2012. This matter is now ripe for resolution.

## DISCUSSION

A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). "[R]elief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted).

The Defendant contends that he is entitled to relief because Attorney Friend provided ineffective assistance by failing to properly investigate the reason the Defendant did not want to

accept a written plea agreement from the Government and to explain the option of entering an

open plea to the indictment. To establish ineffective assistance of counsel, a defendant must

satisfy *Strickland*'s familiar two-prong standard. First, a defendant must demonstrate that his

attorney's representation was "deficient" because it "fell below an objective standard of

reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, a defendant

must show that this deficient performance prejudiced his defense. *Id.* at 694. Prejudice is

demonstrated by a showing that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.*

> A court considering a claim of ineffective assistance must apply a strong
> presumption that counsel's representation was within the wide range of reasonable
> professional assistance. The challenger's burden is to show that counsel made errors
> so serious that counsel was not functioning as the counsel guaranteed the defendant
> by the Sixth Amendment."

*Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) (internal quotation marks and citations

omitted); *see also Yu Tian Li v. United States*, 648 F.3d 524, 527–28 (7th Cir. 2011) ("To reflect

the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [a

court's] review of an attorney's performance is highly deferential and reflects a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance.") (citing *Strickland*, 466 U.S. at 689).


### A.     Ineffective Assistance for Failure to Properly Investigate the Defendant's Background

First, the Defendant challenges Attorney Friend's alleged failure to investigate the

Defendant's background. (Supplemental Br. in Supp. of Def.'s Mot. to Vacate 17–19, ECF No.

376.) According to the Defendant, "[t]rial counsel's performance was objectively unreasonable

because he failed to investigate precisely why it was that Mr. Cuellar-Chavez did not wish to accept any written plea agreements from the government regardless of the terms." (*Id.* 18.) The Defendant emphasizes that he is from Mexico and that his family still resides in Mexico. (*Id.*) Had he agreed to a plea agreement with the Government, the Defendant maintains that this would have potentially subjected his family to retribution from his employers. (*Id.*) If Attorney Friend had thoroughly investigated the Defendant's background and his reasons for not agreeing to written plea offers from the Government, the Defendant reasons that Attorney Friend would have understood that entering an open plea to the indictment would have been the best option for the Defendant. (*Id.* 18–19.) The Defendant argues that an open plea to the indictment would have allowed him to (1) receive credit for acceptance of responsibility and receive a lesser sentence than if he had gone to trial; (2) avoid signing a plea agreement that would have required him to cooperate with the Government, which would protect his family from potential retribution from his employers; and (3) avoid going to trial. (*Id.* 19.) In its Response, the Government argues that the Defendant's argument is unsupported by the evidentiary record. (Government's Post-Hearing Br. 16–18, ECF No. 381.) According to the Government, Attorney Friend discussed the Defendant's background and family circumstances on at least two occasions and reviewed the background information contained in the Pre-Trial Services Report. (*Id.* 17.)

In *Strickland*, the Supreme Court made clear that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "For example, when the facts

thatsupport a certain potential line of defense are generally known to counsel because of what the Defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." *Id.* The Seventh Circuit has emphasized that "when a petitioner alleges counsel's failure to investigate resulted in ineffective assistance, that petitioner has the burden of providing the Court with specific information as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *see also United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990) (A petitioner must present "a comprehensive showing as to what the investigation would have produced.").

Here, the Defendant asserts that Attorney Friend rendered ineffective assistance because he failed to investigate the Defendant's family background and the Defendant's reasons for not wanting to cooperate with the Government. The Court finds that this argument is unsupported by the record. In February 2012, the Court held a two-day evidentiary hearing on the Defendant's habeas petition. At the evidentiary hearing, Attorney Friend testified regarding his representation of the Defendant. (Feb. 23 Evidentiary Hr'g Tr.) Attorney Friend officially entered his appearance on December 17, 2007. (*Id.* 19.) On December 27, 2007, Attorney Friend met with the Defendant and a Spanish speaking interpreter. (*Id.* 20–22.) At this meeting, Attorney Friend introduced himself to the Defendant and discussed the Defendant's background. (*Id.* 22.) Specifically, Attorney Friend asked the Defendant for his full name, date of birth, citizenship, home, the location of his family, employment history, education history, criminal history, and whether he had any contacts in the area that spoke English. (*Id.*) Attorney Friend also discussed the Pre-Trial Services Report with the Defendant. (*Id.*)

After eliciting testimony regarding Attorney Friend's initial meeting with the Defendant,

counsel for the Defendant questioned Attorney Friend about his knowledge concerning the Defendant's family. (Feb. 23 Evidentiary Hr'g Tr. 25.) Attorney Friend reviewed his notes and stated that the Defendant was born in Mexico and his immediate family still resided there. (*Id.*) The Defendant informed Attorney Friend that he did not have any local contacts or family in Fort Wayne. (*Id.*) According to Attorney Friend's notes, he and the Defendant reviewed the Pre-Trial Services Report together, including the section concerning the Defendant's background. (*Id.*) Attorney Friend then read a passage of the Pre-Trial Services Report at the request of counsel:

> The report indicates that the Defendant reported that he was born in a city in Mexico. . . . He stated that he grew up near Monte Ray, Mexico. That he resided in Monte Ray, Mexico urban area shortly or since shortly before his birth. He reports that he rents this residence. Has resided at this particular residence for three years. Has resided at a previous residence for 13 years.
> The Defendant's parents are deceased; that he has five brothers and a sister, all of who reside in Mexico
> The Defendant was married in 1988 to Maria Martinez. That they – the couple has two daughters, states their names and their ages, and that both children reside in the home.

(*Id.* 26–27.) The subsequent exchange took place between counsel for the Defendant (Johnson) and Attorney Friend:

Johnson: Does that bring to mind any other information that Mr. Cuellar-Chavez shared with you regarding his family?

Friend: No, it does not.

Johnson: Mr. Friend, did Mr. Cuellar-Chavez ever discuss any concerns for his family with you?

. . .

Friend: I don't recall specifically those – those conversations. I would like to say that as a – any Defendant would have certain concerns about a spouse or children, but I don't remember any specific concerns that

> he had. I don't remember anything about whether they would come and visit or whether they were in danger, whether they were in ill health or anything of that nature, so I don't recall specific conversations now.

(*Id.* 27–28.)

Based on the evidence contained in the record, the Court finds that Attorney Friend's investigation of the Defendant's background was objectively reasonable and consistent with professional norms. Attorney Friend explicitly discussed the Defendant's background with the Defendant at their initial meeting and review of the Pre-Trial Services Report, which included information regarding the Defendant's family and their residence. The Court recognizes the significant deference afforded to trial counsel's investigatory decisionmaking. *See Strickland*, 466 U.S. at 691.

Here, the Defendant asserts that if Attorney Friend had further investigated his background that Attorney Friend would have discovered that he feared for the safety of his family in Mexico if he cooperated with the Government, and that an open plea to the indictment would allow him to protect his family while receiving the benefits of accepting responsibility for his actions. According to the Defendant, "[t]rial counsel must conduct reasonable investigation into the reasons *why* a Defendant may not want to accept a written plea agreement from the government." (Supplemental Br. in Supp. of Def.'s Mot. to Vacate 17 (emphasis in original).) The Defendant offers no case law in support of this position.

In the context of ineffective assistance of counsel for an alleged failure to investigate potential witnesses, the Seventh Circuit has recognized that a client-defendant has a responsibility to direct and assist his attorney in developing potential avenues of investigation. *See, e.g., Terrell v. Pfister*, 443 F. App'x 188, 193 (7th Cir. 2011) ("But trial counsel is not

obligated to chase down every lead or 'engage in a scavenger hunt for potentially exculpatory information' without direction from a client, and counsel's decision to avoid pursuing investigations that would be fruitless cannot be considered unreasonable.") (quoting *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002)); *U.S. ex rel. Kleba v. McGinnis*, 796 F.2d 947, 958 (7th Cir. 1986) (finding no ineffective assistance where the Defendant failed to provide counsel with sufficient information to pursue the issue); *see also Allen v. Sec'y, Fl. Dept. of Corrs.*, 611 F.3d 740, 752 (11th Cir. 2010) (stating that, in evaluating the reasonableness of a defense attorney's investigation, the court weighs heavily the information provided by the Defendant). Analogously, it is reasonable to expect a defendant to guide trial counsel in an investigation of his background. If a defendant does not wish to cooperate with the Government because of a concern for the safety of his family, he is responsible for communicating that concern to his attorney. A defendant cannot expect trial counsel to read his mind. Investigatory decisionmaking is not a one-way street—defense counsel cannot make informed decisions about what to investigate without the cooperation of the defendant.

In this case, there is no evidence that the Defendant informed Attorney Friend of his concerns for his family's safety. Rather, when repeatedly questioned why he did not want to accept a plea agreement and cooperate with the Government, the Defendant maintained that he was innocent. (*See* Feb. 23 Evidentiary Hr'g Tr. 39, 42, 43; Feb. 28 Evidentiary Hr'g Tr. 23–24.) The Defendant does not allege that he provided any information to Attorney Friend regarding his family that would have led a reasonable attorney to further investigate the Defendant's background. Consequently, the Court finds that Attorney Friend's performance was reasonable under the circumstances. Therefore, the Defendant's claim of ineffective assistance for failure to

investigate must fail.

### B. Ineffective Assistance for Failure to Inform the Defendant of the Option to Enter an Open Plea to the Indictment.

Next, the Defendant argues that Attorney Friend rendered ineffective assistance of counsel because he "'did not make a *meaningful* attempt to inform the Defendant of his option to plead open to the indictment before it was too late." (Supplemental Br. in Supp. of Def.'s Mot. to Vacate 19 (quoting *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012)) (emphasis in the Def.'s Br.).) In the Defendant's view, the record demonstrates that Attorney Friend discussed pleading guilty in general terms, but did not specifically explain to the Defendant the option of entering an open plea to the indictment. (*Id.*) The Defendant contends that he would have entered an open plea of guilty had he been made aware of the option do so. In its Response, the Government emphasizes that the Defendant always maintained his innocence and, consequently, cannot now argue that he would have agreed to an open plea to the indictment. (Government's Post-Hr'g Br. 16–18, 19–20.) Further, the Government points to multiple instances in the record that indicate Attorney Friend did, in fact, discuss the possibility of an open plea to the indictment with the Defendant. (*Id.* 18.) In his Reply, the Defendant maintains that "had he known he could have pled guilty to his involvement to the court, *without a written plea agreement incurring responsibilities to the Government*, he would have pled straight-up, instead of going to trial." (Def.'s Reply to Government's Post-Hr'g Br. 3, ECF No. 384 (emphasis in original).)

Under the Sixth Amendment, criminal defendants are entitled to effective assistance of counsel during plea negotiations. *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). In a case like the one at hand:

> even where counsel properly advises a client that she has the right to go to trial if she maintains her innocence, this advice must be cabined by a larger discussion in which counsel fully informs the client of the available options and ensures that the client's decision is as informed as possible.

*Titlow v. Burt*, 680 F.3d 577, 589–90 (6th Cir. 2012) (internal citations, quotations, and alterations omitted).

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.

*Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). In light of *Frye*, *Cooper*, *Hill v. Lockhart*, 474 U.S. 52 (1985), and *Strickland*, the Court recognizes that a habeas petitioner could potentially demonstrate ineffective assistance of counsel based on a defense attorney's failure to discuss the option of entering an open plea to an indictment with him during the plea bargaining process. However, the Defendant has not presented evidence that would warrant such a finding in the present case.

1.     Deficient Performance

To establish that Attorney Friend's performance was objectively unreasonable in this case, the Defendant must prove by a preponderance of the evidence that Attorney Friend did, in fact, fail to inform the Defendant of the option of entering an open plea of guilty to the indictment. *See Hearn v. United States*, 194 F.2d 647, 649 (7th Cir. 1952) ("To sustain his motion made under Sec. 2255, the burden of proof was on the appellant to establish by a preponderance of the evidence that he had been deprived of some right under the Constitution."). The Defendant has not met his evidentiary burden here.

In support of his position, the Defendant has submitted an affidavit in which he states:

> 5.     Attorney Mr. Friend never explain [sic] Affiant any plea offers that did not involve cooperation.
>
> 6.     That Affiant [sic] attorney Mr. Friend's only proposal was that the government had offered a plea agreement with cooperation, and that if anyone wanted to plead to something less than the entire indictment, then they were going to have to cooperate with the government, and if they didn't, they could go to trial and face a sentence of 30 years.
>
> 7.     That four or five weeks before trial, Affiant's Attorney Mr. Friend visited Affiant to the county Jail and offered him a plea agreement written in spanish [sic] with a clause that specifically stated that Affiant waive all his rights and also that he had to cooperate with the government.
>
> 8.     That Affiant refused the plea agreement that Mr. Friend offered to him due to that clause of cooperation.

(Cuellar-Chavez Aff. ¶¶ 5–8, ECF No. 351.) The Defendant's Affidavit is contradicted by Attorney Friend's testimony at the evidentiary hearing. At his initial meeting with the Defendant, Attorney Friend and the Defendant engaged in a discussion concerning the Defendant's interest in going to trial or entering into a plea agreement:

> [W]e discussed options as to whether [the Defendant] wanted to go to trial or whether he would – an option as to admitting, basically about the trial would be a denial if he was saying that he was – that he was not guilty, that he wanted to plead innocent, to let a jury decide the issue of guilt or innocence. That ultimately if he was convicted, the Judge would determine the sentence.
>      We also talked about the option of looks like a guilty plea or *admitting to the charged violation in the Indictment*, and what that would ultimately mean; the fact that there would not be any trial, that he would proceed to sentencing, and that there would – by accepting responsibility, there be less jail time.

(Feb. 23 Evidentiary Hr'g Tr. 24 (emphasis added).) Later, counsel for the Defendant explicitly questioned Attorney Friend regarding his advice concerning an open plea to the indictment:

> Johnson:     Mr. Friend, did you ever discuss pleading straight up with Mr. Cuellar-Chavez?

13

Friend:        Yes.

Johnson:       When did you have this discussion with him?

Friend:        Really according to my – as I look at the summary of my notes, from the very beginning of the case, by trying to talk to him generally about does he went to go to trial or does he want to do a plea. And we would have explored, then, how we can do a plea. And you're right, there's different ways to do a plea, binding versus unbinding, specific terms, cooperation, safety valve, or a plea straight up. So yes, we would have had those discussion at the jail about any way of him getting comfortable with a – a guilty plea with or without an agreement, with or without binding terms, with cooperation, without cooperation, whether – and the implication of the guidelines as to those discussions. So yes, I believe that we did have those conversations.

Johnson:       Can you point to any place on the record, in your voucher, in any of your letters that we have reviewed here today that where there was any discussion about pleading straight up?

Friend:        The last letter, certainly, of October 3rd, I was trying to indicate to him that all he had to do was plead guilty.

Johnson:       Does your understanding of pleading straight up include a written plea agreement?

Friend:        Well, at that time, we didn't have any revised agreement from the Government. There had been this offer extended that he did not need to cooperate, he simply needed to plead guilty. I was looking for an opportunity for him to avoid the trial, because I looked at the – I anticipated that at the time of sentencing, things were not going to be as he wanted. So I – I took that as an opportunity, whatever shape or form it would take him to plead. Also my notes at the very beginning of the representation back from December, at least looking at my notes suggest that we had discussions about do you want to go to trial or do you want to do a plea and general discussions about what shapes and forms those could be. I don't see anywhere specifically in a letter that I – that I have about pleading straight up. Part of the implication to that, I think, was that he was facing this mandatory minimum of five years by pleading straight up. And we were trying to – everything that we were attempting to do in his case was to avoid that mandatory minimum.

               So him pleading straight up, I think, had – it was an under

14

current to all of our discussions, and that was not probably a good choice to make.

(*Id.* 62–64.)

Given the evidence presented by the parties, the Court finds that the Defendant has not proven by a preponderance of the evidence that Attorney Friend failed to inform him of the option of entering an open plea to the indictment. As Attorney Friend explained at the Evidentiary Hearing, he discussed the possibility of an open plea to the indictment with the Defendant at their first meeting together. (Feb. 23 Evidentiary Hr'g Tr. 24, 62–64.) With the benefit of an in-person hearing, the Court was able to observe Attorney Friend's body language, demeanor, and speech patterns while Attorney Friend testified concerning his discussion of an open plea with the Defendant. Attorney Friend provided forthright answers to questions regarding his representation of the Defendant and, based on the Court's observations, the Court finds that Attorney Friend was a reliable and credible witness. To the extent that Attorney Friend was not able to recall precise details of every conversation he had with the Defendant prior to trial, the Court recognizes that this diminution in memory is normal considering the passage of more than three years and does not consider it evidence of evasiveness or untruthfulness on the part of counsel.

The Defendant also cites the testimony of Samuel Melo, a Spanish-English interpreter who was present during certain discussions with the Defendant and Attorney Friend, as evidence of his counsel's ineffectiveness. However, Melo's testimony does not alter the Court's conclusions with regard to the veracity of Attorney Friend's testimony. The Defendant cites Melo's testimony as evidence that Attorney Friend failed to discuss the option of pleading open to the indictment with the Defendant. (Supplemental Br. in Supp. of Def.'s Mot. to Vacate

19–20; Def.'s Reply to Government's Post-Hr'g Br. 5–6.) At the evidentiary hearing, Melo stated that he did not remember any discussion between Attorney Friend and the Defendant concerning the option of entering an open plea to the indictment:

Johnson:     Mr. Melo, did you ever translate a discussion about pleading straight up for Mr. Travis Friend, explaining this to Mr. Cuellar-Chavez?

Melo:     I don't recall that.

Johnson:     You don't recall that on any one particular session or you don't recall discussing that at all?

Melo:     I don't recall that was discussed. I don't recall that that was ever discussed. I don't remember that.

Johnson:     So regarding the various meetings that you had, and the various letters that you translated, and the letters that were shown to you, you don't recall pleading straight up as being a topic of discussion that you translated?

Melo:     Again, because it's been so long, I do recall – the only I can assure is that I interpret everything that was said during the meeting or every letter that was given to me, any document to translate. But specifically, I don't recall that conversation, no.

Johnson:     And would this be something that would be memorable to you, this topic of discussion?

Melo:     It's hard to say and the reason is it's easy to mix different clients that I have interpreted for in the past, so what normally is memorable, if it's something personal, something about the person, you know, the family or something that, the type of arrangements or plea, I couldn't say, it would be memorable. It would be part of the job normally.

Johnson:     Have you had occasion to translate for a client that ever accepted in Federal Court a plea straight up?

Melo:     I have not.

Johnson:     So would this have caught your memory, this discussion here in Federal Court more than, say, in a state court situation if you have seen a straight up plea?

| | |
|---|---|
| Melo: | Yes, if I have seen one, probably would have made it more memorable. |
| Johnson: | But you've not seen a straight up plea here in Federal Court? |
| Melo: | I have not. |
| Johnson: | Okay. So that would have been an unusual topic of discussion for you, correct, here in Federal Court? |
| Melo: | In Federal Court, correct. I've seen it in state court. |
| Johnson: | Okay. |

(Feb. 28 Evidentiary Hr'g Tr. 24–25.) On redirect, counsel for the Defendant further questioned

Melo about the subject of an open plea to the indictment:

| | |
|---|---|
| Johnson: | Mr. Melo, you just testified under cross that you would have been the one to translate for Mr. Friend, whatever he placed in front of you, is that correct? |
| Melo: | That is correct and I – I say if I was the interpreter that day, that would be correct |
| Johnson: | . . . But you yourself have no independent memory of discussing pleading straight up independently of anything else, your own memory, you don't have – you don't have a recall of discussing or translating pleading straight up, is that correct? |
| Melo: | That is correct, I don't recall that independently. |

(*Id.* 29.)

According to the Defendant, "but for the self-serving statements made by Mr. Friend

regarding an 'under current' of a pleading open discussion, the record is void of evidence of any

effort by Attorney Friend to communicate pleading open to the client during the pretrial window,

let alone any evidence that Mr. Cuellar-Chavez's conduct interfered with Attorney Friend's

ability to do so." (Supplemental Br. in Supp. of Def.'s Mot. to Vacate 20 (internal citation

omitted).) The Defendant notes that Attorney Friend wrote the Defendant 20 letters, none of which mention entering an open plea to the indictment. (*Id.*)

The Court finds the Defendant's arguments unavailing and offers several observations. First, the absence of proof is not proof of absence. The fact that Attorney Friend's written records do not include notes or statements regarding a discussion of an open plea to the indictment with the Defendant do not mean that such a discussion did not take place. Second, the Defendant places too great of weight on Melo's testimony. Melo consistently testified that he had no recollection of Attorney Friend discussing an open plea to the indictment with the Defendant and the Court has no reason to question the credibility of Melo. However, Attorney Friend met with the Defendant on 22 separate occasions. (Friend Aff. ¶ 2, ECF No. 355-2.) Melo was only present at three of Attorney Friend's jail visits with the Defendant and an unknown number of courtroom sessions. (Supplemental Br. in Supp. of Def.'s Mot. to Vacate 19.) Given that Melo was not present for every discussion that Attorney Friend had with the Defendant, the fact that he does not recall any discussion of an open plea to the indictment is of limited significance. Third, and most importantly, Attorney Friend testified that he discussed the option of an open plea to the indictment with the Defendant at the time of their initial meeting on December 27, 2007. (Feb. 23 Evidentiary Hr'g Tr. 24.) According to Attorney Friend, Melo was not the interpreter at his initial meeting with the Defendant. (*Id.* 20.) Attorney Friend's notes from the first meeting confirm that Melo was not the interpreter at the first meeting. (*Id.* 21–22.) Consequently, the record demonstrates that Melo was not present at the specific meeting at which Attorney Friend alleges he discussed the option of an open plea with the Defendant, further reducing the significance of Melo's testimony.

Here, the parties have presented conflicting accounts of Attorney Friend's representation. By affidavit and the testimony of Melo, the Defendant maintains that Attorney Friend failed to inform him of the option of entering an open plea to the indictment. On the other hand, the Government points to the testimony of Attorney Friend from the evidentiary hearing to support its position that the Defendant was informed about the option of entering an open plea to the indictment. Although the Court finds that Attorney Friend's testimony was credible, the Court acknowledges that the record does not definitively establish whether or not Attorney Friend informed the Defendant of his option to enter an open plea to the indictment. But this lack of clarity does not mandate a finding in favor of the Defendant. Ultimately, it is the Defendant's burden to establish that Attorney Friend's representation was objectively unreasonable by a preponderance of the evidence. *See Hearn*, 194 F.2d at 649 ("To sustain his motion made under Sec. 2255, the burden of proof was on the appellant to establish by a preponderance of the evidence that he had been deprived of some right under the Constitution.") Here, the Defendant has not met his burden of proof and, therefore, based on the evidence in the record, the Court finds that Attorney Friend's performance was objectively reasonable under all the circumstances.

2.      *Prejudice*

Assuming *arguendo* that Attorney Friend's performance was objectively unreasonable, the Defendant has failed to establish that he suffered any prejudice as a result of Attorney Friend's performance. The Supreme Court's decision in *Frye* established a three-part test that a petitioner must satisfy to establish prejudice as a result of ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance." 132

S. Ct. at 1409.

> [D]efendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* The application of the *Frye* test to the present case is awkward because the plea at issue is not a traditional plea offer from the Government but rather an open plea to the indictment. Nonetheless, to establish prejudice under *Frye*, it is reasonable to conclude that the Defendant must demonstrate a reasonable probability that he would have entered an open plea to the indictment absent ineffective assistance of counsel. Here, the Defendant has failed to meet his burden.

The Defendant maintains that he would have entered an open plea to the indictment if Attorney Friend had presented him with that option. In support of his position, the Defendant emphasizes that he "knowingly and voluntarily admitted his involvement in the indicted offense . . . after voluntarily signing a *Miranda* waiver." (Supplemental Br. in Supp. of Def.'s Mot. to Vacate 21.) The Defendant points to a letter from the Government sent to his Attorney Friend in which the Government acknowledged his initial admission of guilt. (*Id.*) In its Response, the Government emphasizes that the Defendant consistently maintained his innocence throughout the course of his criminal proceedings and therefore the Defendant cannot plausibly argue that he would have entered an open plea to the indictment absent Attorney Friend's alleged deficient performance. (Government's Post-Hr'g Br. 16–17, 18–20.) Based on the record in the present case, the Court finds that the Government has the better of the arguments.

20

The Seventh Circuit has recognized that a defendant's assertion of innocence weighs against a finding that he or she would have plead guilty but for their counsel's ineffective assistance. *Welch v. United States*, 370 F. App'x 739, 743 (7th Cir. 2010) (citing *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005); *Moss v. United States*, 323 F.3d 445, 475 (6th Cir. 2003); *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003); *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998); *United States v. Stantini*, 85 F.3d 9, 17 (2d Cir. 1996)).[1] Here, the record is replete with the Defendant's declarations of innocence. At the evidentiary hearing on February 23, 2012, Attorney Friend explained that the Defendant consistently "maintained his innocence. He said he wasn't guilty and he wanted a trial. . . . That was a continuing reason he gave." (Feb. 23 Evidentiary Hr'g Tr. 39.) According to Attorney Friend, the Defendant denied being involved in any conspiracy with his co-defendants. (*Id.* 42.) During examination of Attorney Friend regarding his analysis of a possible safety valve reduction or a 5(K)(1) departure, counsel for the Defendant questioned why the Defendant did not want to cooperate with the Government. (*Id.* 43.) Attorney Friend responded, "Well, because he maintained that he was innocent. I would receive letters from his pastor as well saying he was innocent and what a tragedy this was, and how he was upset with his previous lawyer who tried to come to the jail and present him with plea proposals." (*Id.* 43–44.)[2]

---

[1] The *Welch* Court noted two decisions in which sister circuits recognized that a defendant's assertion of innocence is not dispositive of whether a defendant would have accepted a plea agreement or plead guilty. 370 F. App'x at 743 (citing *Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003); *Mask v. McGinnis*, 233 F.3d 132, 138 (2d Cir. 2000)). *Griffin* and *Mask* appear to qualify, rather than reject outright, the proposition that a defendant's repeated protestations of innocence weigh against a finding that he would have plead guilty but for ineffective assistance of counsel.

[2] Prior to sentencing, the Defendant submitted a letter to the Court from his pastor, William Raines, at the Allen County Jail. (Raines' Letter, ECF No. 289.) In his letter to the Court, Reverend Raines stated, "I wish to point out to you that [the Defendant] has consistently stated time and again that he is not guilty of the charges against him." (*Id.* 2.)

On cross-examination, Attorney Friend further discussed the Defendant's assertions of innocence, testifying that the Defendant never indicated that he wanted to plead guilty. (*Id.* 66.) Attorney Friend elaborated further:

Government:    Did you think that during the various plea offers that had been related to Mr. Cuellar-Chavez that there was a sticking point in terms of why it is he didn't want to accept a plea agreement from the Government?

Friend:    Yes.

Government:    What was that?

Friend:    That he was not guilty.

Government:    And do you think cooperation played a part in that as well, the fact that the Government was asking him to cooperate and testify?

Friend:    For a long time I did, yes.

Government:    And why did you think – did you change your thoughts?

Friend:    Well, because the – the final offer didn't require his cooperation, and it met with the same response, which was a rejection.

Government:    And during the trial, Mr. Cuellar-Chavez had the benefit of interpreters to explain to him in his Spanish dialect what the evidence was, what the witnesses were saying and what the documents were, is that correct?

Friend:    Yes.

Government:    At any time at trial, did he ever come off his position that he was innocent?

Friend:    No.

Government:    At trial, what position did he take about his voice being on those tapes that were played for the jury?

Friend:    At trial, I believe his position was that that wasn't his voice.

Government:    And at trial, did he take a position on whether or not the statement the

|  |  |
|---|---|
| | ICE agents said he made, he, in fact, made? |
| Friend: | He took a position, yes, and his position was that the testimony by the agents was incorrect. |
| Government: | And did he also believe or relay to you that was gun was place to his head at the time those statements were allegedly made? |
| Friend: | He made that statement to me before trial, yes. . . . Miss Nomay, specifically with regard to the statement about the gun being placed to his head, yes, he clearly indicated that to me, if that's your [question]. |

(*Id.* 67–69.) According to Attorney Friend, the Defendant "did not want to plead guilty under any circumstances." (Friend Aff. ¶ 8.) The testimony of Samuel Melo further corroborates Attorney Friend's explanation for the Defendant's lack of interest in pleading guilty:

|  |  |
|---|---|
| Johnson: | Do you recall Mr. Cuellar-Chavez ever stating adamantly that he was innocent? |
| Melo: | Yes, I do remember that. |
| Johnson: | And was that early on in your dealings with him or was that closer to trial? |
| Melo: | I don't recall when that was, but I remember that did happen several times where he said he was innocent. . . . That he had nothing to do with [the conspiracy]. |

(Feb. 28 Evidentiary Hr'g Tr. 23–24.)

Here, the Defendant has not presented the Court with any substantive evidence to demonstrate a reasonable probability that he would have entered an open plea to the indictment but for Attorney Friend's alleged ineffective assistance. The Defendant cites his signing of a *Miranda* waiver and initial confession to law enforcement agents as evidence of his willingness to accept responsibility for his actions and, presumably, to plead guilty. However, the Court notes that the Defendant later renounced his confession, insisting that the confession was a

product of coercion due to law enforcement agents allegedly pointing a gun at his head. The testimony of Attorney Friend and Melo demonstrates that the Defendant wanted to go to trial because he believed that he was innocent. Whatever his true motivation for going to trial, the Defendant repeatedly told Attorney Friend that he was innocent and indicated that he had no desire to plead guilty *under any circumstances*. "A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be unwilling to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders*, 341 F.3d at 723. Beyond conclusory assertions in his pleadings, the Defendant has not presented sufficient evidence to establish a reasonable probability that he would have entered an open plea to the indictment absent counsel's deficient performance. Therefore, the Defendant cannot establish prejudice and his ineffective assistance claim will be denied.

This conclusion is supported by the Defendant's treatment of the Government's final plea offer, which was a functional equivalent to the open plea that the Defendant insists he would have accepted but for Attorney Friend's alleged ineffective assistance. On October 2, 2008, the Assistant United States Attorney assigned to prosecute the Defendant's case contacted Attorney Friend. (Oct. 3, 2008, Friend Letter, ECF No. 355-2 at 32.) The Government extended a final plea offer to the Defendant. (*Id.*) In exchange for a plea of guilty to the charged offense, the Government offered a fixed 46 month sentence minus time served. (*Id.*) Most significantly, the offer did not require any cooperation with the Government. (*Id.*) The Defendant would not have had to testify against any of his co-conspirators. (*Id.*) On October 3, 2008, Attorney Friend and Melo visited the Defendant at the Allen County Jail. (Feb. 23 Evidentiary Hr'g Tr. 50–54.)

Attorney Friend explained the plea offer to the Defendant and emphasized that the Defendant would not have to cooperate with the Government as part of the plea agreement. (*Id.* 52–54.) Despite there being no requirement that he cooperate with the Government, the Defendant rejected the plea agreement. (*Id.*)

The terms of the October 2nd plea offer were essentially identical to what would have been required of the Defendant had he entered an open plea to the indictment. As with an open plea, the Defendant would not have had to cooperate with the Government and would have only been required to plead guilty to the charged offense. The Government's plea offer would have provided an additional benefit to the Defendant in its provision of a fixed sentence well below the sentence he would have received with an open plea to the indictment. Nonetheless, the Defendant argues that an open plea would have allowed the Defendant to avoid any reciprocal obligation to the Government. (Supplemental Br. in Supp. of Def.'s Mot. to Vacate 20.) According to the Defendant, "any plea bargain with the government creates reciprocal obligations between the government and the defendant." (*Id.* 18.) The statement of the law is correct, but misses the point and is of limited relevance to the situation at hand. A plea agreement is a contract, *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012) (citing *United States v. Quintero*, 618 F.3d 746, 751 (7th Cir. 2010)), which necessarily requires reciprocal obligations between the parties. However, a reciprocal obligation does not necessarily entail cooperation. In the present case, the Defendant's obligation under the October 2nd proposed plea offer would have been the same as the Defendant's obligation as part of an open plea to the indictment—the Defendant would have had to plead guilty to the charged offense. Under either scenario, the Defendant would not have been required to cooperate with the

Government. The Defendant has stated that he would have entered an open plea to the indictment if he had been aware of his option to do so because it would have allowed him to plead guilty without cooperating with the Government and potentially endangering his family in Mexico. But when presented with the opportunity to plead guilty and receive a fixed sentence without any requirement of cooperation, the Defendant failed to accept that offer.

Because the Defendant continually maintained his innocence and rejected the functional equivalent of an open plea to the indictment, he has failed to demonstrate a reasonable probability that he would have entered an open plea to the indictment but for counsel's alleged ineffective assistance. Therefore, the Defendant cannot demonstrate prejudice and his ineffective assistance claim will be denied.

## CONCLUSION

For the reasons stated above, the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 349] is DENIED.

SO ORDERED on February 4, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT